******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANDREA MEKRUT *v.* MICHAEL SUITS
(AC 34880)

DiPentima, C. J., and Robinson and Mihalakos, Js.*

*Argued November 13, 2013—officially released January 28, 2014*

(Appeal from Superior Court, judicial district of Middlesex, Calmar, J. [dissolution judgment]; Morgan, J. [motions for contempt, modification]; Abrams, J. [motion for contempt].)

*Richard F. Paladino*, for the appellant (defendant).

*Howard M. Gould*, with whom was *Elizabeth R. Woodhull*, for the appellee (plaintiff).

*Opinion*

MIHALAKOS, J. The defendant, Michael Suits, appeals from various postjudgment orders following the dissolution of his marriage to the plaintiff, Andrea Mekrut. He first challenges the judgment of the trial court granting the plaintiff's first postjudgment motion for contempt for failure to pay alimony and denying the defendant's first postjudgment motion to modify his alimony obligation, claiming that the court erred in (1) finding that the defendant's failure to allocate a sufficient amount of his severance funds toward his alimony obligation was wilful contempt, and (2) failing to reduce the defendant's alimony obligation in light of a substantial change in his financial circumstances. The defendant also challenges the judgment of the trial court granting the plaintiff's second motion for contempt, claiming that the trial court deprived him of due process in refusing to conduct an evidentiary hearing on the motion. Finally, the defendant claims that the court erred in incarcerating the defendant without finding an ability to pay. We affirm the trial court's judgment with respect to the first finding of contempt. We agree, however, with the defendant's claim regarding the court's second finding of contempt and, accordingly, reverse the judgment with respect to that claim.

The following facts and procedural history are relevant to this appeal. On August 13, 2009, the parties entered into a marital separation agreement, and the court incorporated this agreement into its judgment dissolving their marriage. The defendant was ordered to pay weekly alimony in the amount of $550 until August 13, 2012, and thereafter $450 until August 13, 2019. Both parties were ordered to contribute to the cost of their daughter's college expenses and to the cost of preparing a qualified domestic relations order (QDRO) regarding the division of retirement funds.

On September 6, 2011, the defendant's employment was terminated, whereupon he received a severance payment in the net amount of $106,528.32. Initially, he continued to pay his alimony obligation, but on February 24, 2012, he ceased payments. At the same time, he spent more than $30,000 of his severance payment on credit card debt, repaying a personal loan, and boat slip fees. In March, 2012, the defendant began to receive gross weekly unemployment compensation of $573.

The plaintiff filed a motion for contempt, arguing, among other things, that the defendant was failing to make alimony payments and had not contributed to the preparation of a QDRO relating to the division of retirement funds. The defendant filed a motion for modification, requesting a decrease in his alimony obligation on the basis of a substantial change in the financial circumstances of both the defendant and the plaintiff. On May 21, 2012, a hearing was held on both motions.

On June 25, 2012, the court, *Morgan, J.*, granted the plaintiff's motion for contempt in part, finding that the defendant owed $8415 in alimony and deeming his failure to pay to be wilful in that he was capable of paying his obligation with his severance funds but chose to allocate them elsewhere. The court also found that the defendant failed to comply with his obligation to contribute to the preparation of a QDRO, but found that the noncompliance was not wilful. At the same time, the court denied the defendant's motion for modification, finding that the defendant had failed to meet his burden of showing a substantial change in circumstances that was not caused by his own culpable conduct. The court ordered the defendant to pay the owed alimony, $600 for the preparation of a QDRO, and $2500 in attorneys' fees. The defendant filed a motion to reargue, which subsequently was denied. He then filed the present appeal.

On July 17, 2012, while the appeal was pending, the plaintiff filed a second motion for contempt, arguing that the defendant had continued his failure to pay alimony. On August 3, 2012, the defendant filed a second motion for modification, again requesting a decrease in his alimony obligation on the basis of a substantial change in the financial circumstances of the parties. On August 13, 2012, a hearing was held on the two motions. At the hearing, the defendant requested an evidentiary hearing on the motions, but the court, *Abrams, J.*, elected to decide the matter without further proceedings. On August 17, 2012, the court granted the plaintiff's motion for contempt and ordered the defendant to pay all arrearages in full by August 27, 2012, or face incarceration. The court did not address the defendant's motion for modification. On August 27, 2012, the defendant, having failed to pay, was ordered incarcerated with a purge amount set for $16,460, the amount owed for the previous contempt plus additional alimony owed since that finding. The defendant amended his appeal to include claims regarding this second finding of contempt. Additional facts will be set forth as necessary.

I

On appeal, the defendant first challenges the trial court's judgment granting the plaintiff's first postjudgment motion for contempt for failure to pay alimony and denying the defendant's first postjudgment motion to modify his alimony obligation. Specifically, he claims that the court erred in (1) finding that the defendant's failure to allocate a sufficient amount of his severance funds toward his alimony obligation was wilful contempt, and (2) failing to reduce the defendant's alimony obligation in light of a substantial change in his financial circumstances. We disagree.

A

We first consider the trial court's finding that the defendant's failure to pay alimony amounted to wilful contempt. "[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007).

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [party] were in contempt of a court order. . . . We review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . .

"[A] court may not find a person in contempt without considering the circumstances surrounding the violation to determine whether such violation was wilful. . . . [A] contempt finding is not automatic and depends on the facts and circumstances underlying it." (Citations omitted; internal quotation marks omitted.) *Dickinson* v. *Dickinson*, 143 Conn. App. 184, 188–89, 68 A.3d 182 (2013). "[I]t is well settled that the inability of [a] defendant to obey an order of the court, without fault on his part, is a good defense to the charge of contempt . . . . The contemnor must establish that he cannot comply, or was unable to do so. . . . It is [then] within the sound discretion of the court to deny a claim of contempt when there is an adequate factual basis to explain the failure." (Citation omitted; internal quotation marks omitted.) *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 398, 985 A.2d 319 (2009). "Whether [a party] establishe[s] [an] inability to pay [an] order by credible evidence is a question of fact." Id., 397.

In the present case, it is undisputed that the alimony order was clear and unambiguous and, therefore, our analysis is directed at whether the court's finding of

wilful contempt was an abuse of discretion. In so finding, the court determined that the defendant, for a period of approximately fourteen weeks, had failed to comply with the court order requiring him to make weekly alimony payments. The court found that the defendant had an ability to comply with the order, in light of the large lump sum he had received only months prior to ceasing payment, but wilfully chose to prioritize other financial obligations. The defendant has failed to produce any viable argument as to why these factual findings should be disturbed.

As the court correctly noted, the fact that the defendant had other financial obligations did not excuse him from complying with a clear court order. See *Turgeon* v. *Turgeon*, 190 Conn. 269, 284, 460 A.2d 1260 (1983) (upholding finding of contempt where contemnor chose to pay Internal Revenue Service debt over paying alimony obligation). The court's ruling did not, as the defendant suggests, require him to have allocated his entire severance package to alimony payments. Rather, he merely was compelled to budget those funds, and the unemployment compensation that he later began to receive, in a way that allowed him to comply with the court's order. Despite the defendant's protests, doing so would not have required any speculation on his part, as the alimony order clearly set forth the weekly allotments necessary for compliance.

B

Next, we consider the defendant's claim that the court erred in failing to reduce the defendant's obligation in light of a substantial change in his financial circumstances. "Trial courts have broad discretion in deciding motions for modification." (Internal quotation marks omitted.) *Shamitz* v. *Taffler*, 145 Conn. App. 132, 138, 75 A.3d 62 (2013). "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) Id., 137–38.

"[W]hen presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties." (Internal quotation marks omitted.) *Olson* v. *Mohammadu*, 310 Conn. 665, 673, A.3d (2013). "[T]he party seeking the modification bears the burden of demonstrating that such a change has occurred." (Internal quotation marks omitted.) Id., 672. "[I]n order to meet the threshold of a substantial change in circumstances, the alleged inability to pay must be excusable and not brought about by the defendant's own fault." (Internal quotation marks omitted.)

Id., 674. "[I]f a party's culpable conduct causes an inability to pay an alimony award . . . then the threshold question of whether a substantial change of circumstances exists is not met." (Emphasis omitted; internal quotation marks omitted.) Id., 677.

Here, the defendant claims that the court did not resolve the threshold issue of whether a substantial change in financial circumstances had occurred. On the contrary, the court expressly found that the defendant had not met his burden of establishing a substantial change in circumstances because the change was caused by the defendant's culpable conduct in prematurely spending his severance funds. As a determination of culpability is factual in nature, we defer to the court's finding unless it is clearly erroneous. See *Olson* v. *Mohammadu*, supra, 310 Conn. 684 ("if a party's voluntary action gives rise to the alleged substantial change in circumstances warranting modification, the [trial] court must assess the motivations underlying the voluntary conduct in order to determine whether there is *culpable* conduct foreclosing a threshold determination of a substantial change in circumstances" [emphasis in original]). The defendant has failed to identify anything in the record that gives us reason to upset the court's finding of culpability, and, thus, we conclude that the court properly denied the defendant's motion for modification.

II

A

As to the second finding of contempt, the defendant claims that he was deprived of due process when the court refused to conduct an evidentiary hearing on the motion. We agree and, accordingly, reverse the court's judgment with respect to its granting the second motion for contempt.

As set forth previously, we review a judgment of contempt of a clear and unambiguous court order under an abuse of discretion standard. "A finding of . . . contempt [occurring outside the presence of the court] must be established by sufficient proof that is premised on competent evidence presented to the trial court and based on sworn testimony. . . . A trial-like hearing should be held if issues of fact are disputed." (Emphasis omitted; internal quotation marks omitted.) *Kelly* v. *Kelly*, 54 Conn. App. 50, 59, 732 A.2d 808 (1999). "Due process of law requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. . . . Because the inability of [a party] to obey an order of the court, without fault on his part, is a good defense to a charge of contempt . . . [the

party] ha[s] the right to demonstrate that his failure to comply with the order of the trial court was excusable." (Citations omitted; internal quotation marks omitted.) *Bryant* v. *Bryant*, 228 Conn. 630, 637, 637 A.2d 1111 (1994).

In the present case, the court was presented with a second motion for contempt filed by the plaintiff and a second motion for modification filed by the defendant. The defendant repeatedly requested an evidentiary hearing to present evidence in support of his position. In response, the court informed the parties that the matter would be decided "on the papers," presumably relying on the record from the court's previous orders granting the plaintiff's first motion for contempt and denying the defendant's first motion for modification. Shortly thereafter, without any evidentiary hearing taking place, the court issued an order granting the second motion for contempt and requiring the defendant to pay the owed alimony within ten days or face incarceration. Although the defendant was afforded an opportunity to testify at the subsequent hearing at which the defendant was ordered incarcerated, the second finding of contempt had already been made and that hearing concerned only whether the defendant had paid the alimony within ten days as ordered. Thus, the defendant never was afforded an evidentiary hearing on the second motion for contempt itself.[1] The court's refusal to hold such a hearing was a violation of the defendant's due process guarantees and, therefore, amounted to an abuse of discretion on the part of the court. See *Bryant* v. *Bryant*, supra, 228 Conn. 637–38 (holding that court's failure to hold evidentiary hearing on motion for contempt violated due process rights of party requesting hearing); see also *Kelly* v. *Kelly*, supra, 54 Conn. App. 60 (holding that court's reliance on record of previously decided postjudgment motions in family case was insufficient to satisfy due process without new evidentiary hearing). Accordingly, the judgment granting the plaintiff's second motion for contempt is reversed.

B

Finally, the defendant claims that the court erred in incarcerating the defendant without finding an ability to pay. As we have already concluded that the judgment of contempt for which the defendant was incarcerated is reversed on due process grounds, we need not consider whether the court, prior to granting the second motion for contempt, made the necessary finding that the defendant was able to comply with the court's previous order. We note, however, that we can offer no relief for the defendant's previous incarceration, as he has since been released. See *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 732 n.6, 444 A.2d 196 (1982) ("[a]lthough the [party's] incarceration, if erroneous, can not now be undone, the payment of the fines, if erroneous, can be").

We conclude that the court, *Morgan, J.*, acted properly in granting the plaintiff's first motion for contempt and denying the defendant's first motion for modification. The court, *Abrams, J.*, erred, however, in refusing to hold an evidentiary hearing on the plaintiff's second motion for contempt.

The judgment is reversed only with respect to the order granting the plaintiff's July 17, 2012 motion for contempt, and the case is remanded with direction to hold an evidentiary hearing on that motion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date or oral argument.

[1] The defendant's motion for modification was decided a month later by the court, *Domnarski, J.* Our Supreme Court expressly has held that motions for contempt and motions for modification relating to alimony need not be decided concurrently and, therefore, the trial court did not act improperly in considering the motion for contempt alone. *Bryant* v. *Bryant*, supra, 228 Conn. 638–40.