******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSEPH M. DOYLE *v.* MEGHAN M. DOYLE
(AC 35529)

Lavine, Sheldon and Pellegrino, Js.

*Argued March 17—officially released May 20, 2014*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Hon. Stanley Novack, judge trial
referee [dissolution judgment]; S. Richards, J. [motions
for contempt and to reargue].)

*Marianne J. Charles*, for the appellant (defendant).

*Michael G. Beebe*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. This is an appeal by the defendant, Meghan M. Doyle, from the trial court's judgment denying her postjudgment motion for contempt against the plaintiff, Joseph M. Doyle, for failing to pay 80 percent of the cost of orthodontic care for two of the parties' minor children.[1] The defendant argues that the court abused its discretion by denying her motion for contempt and her ensuing motion to reargue, as well as by applying the legal principles of contract construction to resolve the merits of her claim rather than relying upon the state child support guidelines for that purpose. The plaintiff argues that the defendant has failed to meet her burden of proving that the court abused its discretion by denying her motions, and also that the court did not err in applying the law of contract construction to interpret the parties' separation agreement. We agree with the plaintiff, and thus affirm the judgment of the trial court.

The following factual and procedural history is relevant to our resolution of the defendant's claims. The parties were divorced and entered into a separation agreement on June 23, 2010. The terms of the separation agreement were negotiated by counsel for the parties and were understood and acknowledged by the parties to encompass the entire agreement between them.[2] One topic that was specifically addressed in the agreement was medical care for the parties' minor children. On that subject, the agreement provides in full as follows:[3]

"8.1 The [defendant] shall provide and maintain her existing medical, dental, major medical and hospitalization insurance, or their equivalent, on behalf of the children as long as said medical, dental, major medical and hospitalization insurance is available to her. The [defendant] shall be responsible for TWENTY PERCENT (20.00%) of the premiums attributable to the cost of insuring the minor children under the existing insurance coverage. The [plaintiff] shall be responsible for EIGHTY PERCENT (80.00%) of the premiums attributable to the cost of insuring the minor children under the existing insurance coverage. The split of the premium is based on the proportion of each party's gross income. The [plaintiff] shall pay his share of the monthly premium amount to the [defendant] as non-taxable support at such time he makes that payment. The [plaintiff] agrees to cooperate with the [defendant] in the event of any claims made pursuant to the insurance program above provided. The insurance company or health association shall be authorized to make all payments in drafts payable directly to the medical creditor for the benefit of said children. It shall be the primary obligation of the [defendant] to process any and all medical or related claims on behalf of the children. The [defendant] shall possess all of the rights under Connecticut General Statutes Section 46b-84 (e).

"8.2 In the event that the [defendant] no longer has medical insurance coverage for the minor children, the [plaintiff] shall provide such coverage as long as it is available to him through employment at no cost.

"8.3 In the event that neither party has medical insurance coverage for the minor children available through their respective employment, the parties shall obtain comparable insurance to that coverage most recently in effect for the minor children and the parties shall be responsible for the cost of said insurance premiums on a pro rata basis.

"8.4 Each party shall provide and maintain his or her own medical insurance coverage and be solely responsible for any and all costs incident thereto including but not limited to responsibility for any and all unreimbursed and uninsured expenses." The court, *Hon. Stanley Novak*, judge trial referee, finding the agreement to be fair and equitable, incorporated the separation agreement into its dissolution decree pursuant to General Statutes § 46b-66.[4]

On March 15, 2012, the defendant filed a postjudgment motion for contempt, claiming, inter alia, that the plaintiff had failed to pay for expenses associated with two of the minor children's orthodontic care, in alleged violation of the dissolution decree.[5] On November 26, 2012, a hearing on the motion was held before the court, *S. Richards, J.*, at which both parties testified and presented other evidence. The court, in a memorandum of decision dated February 25, 2013, denied the defendant's motion, finding as follows: "[I]t is quite apparent from a review of subsection 8.1 of the separation agreement that the language itself is crystal clear and unambiguous. There is no confusion whatsoever as to its meaning or the parties' intent derived therefrom. Plain and simple, subsection 8.1 simply does not contain any language that could even remotely, by any stretch of the imagination, be construed to require the plaintiff to pay for the minor children's orthodontic expenses or, for that matter, be responsible for providing and maintaining his 'existing medical, dental, major medical and hospitalization insurance, or their equivalent, on behalf of the children.' It is undeniable that subsection 8.1 of the agreement lacks any language that obligates the plaintiff to bear this particular type of expense. Going one step further, it is also obvious that this subsection 8.1 does not require the plaintiff to pay anything at all toward medical expenses or unreimbursed medical expenses. The rest of section 8 merely addresses the parties' responsibility to pay their respective pro rata share[s] [of] the payment of 'premiums related to the cost of insuring the minor children under the existing coverage.'

"Interestingly, it is also worth noting that the balance of the wording in subsections 8.2, 8.3 and 8.4 use the

words 'medical insurance coverage' only. There is no mention of the words 'dental' or 'dental insurance coverage' anywhere in section 8 other than as said words pertain to the defendant's obligation and said words are not incorporated into the meaning of or are referred to or defined in relation to the term 'medical insurance coverage' as said term relates to the parties' obligations under section 8 of the separation agreement. Other than in the first sentence of subsection 8.1, the word 'dental' is nowhere to be found in section 8 of the separation agreement. Thus the court finds, once again, that section 8 of the separation agreement is clear and unambiguous, contains absolutely no language that obligates the plaintiff to pay for orthodontic bills for the two minor children and is not subject to any alternative interpretation. And the court will not contort any of the words in section 8 or anywhere else in the separation agreement in [an] attempt to construe the existing language in said section in such a manner that runs counter to the parties' intentions that are expressly outlined in section 8 in plain and simple terms." (Footnotes omitted.)

I

We begin by addressing the defendant's claim that the court abused its discretion by denying her motion for contempt. "[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying decree constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying [decree] was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007).

In the present case, the parties' underlying separation agreement and dissolution decree were sufficiently clear and unambiguous to support the court's refusal to issue a judgment of contempt against the plaintiff. The defendant as much as admitted at the hearing on the motion that the separation agreement does not explicitly require the plaintiff to contribute 80 percent of the costs associated with orthodontic care for the parties' minor children.[6] The plaintiff also testified at the hearing to his understanding that there was no provision in the separation agreement that obliged him to pay for any portion of the minor children's orthodontic care.[7] The separation agreement expressly states that it represents the full agreement of the parties and that there are no other undertakings except those expressly

set forth in the agreement. No evidence was presented to the court that the parties' separation agreement required the plaintiff to pay any portion, let alone 80 percent, of the orthodontic costs for his minor children. When reviewing this issue, the court, in its memorandum of decision, set forth the specific language of subsection 8.1 of the separation agreement regarding medical expenses, and noted that "nothing in . . . subsection [8.1] includes any language that places this . . . obligation on the plaintiff, and this is supported by the record in which each party admitted as much during their respective testimony."

We turn next to the second level of inquiry, namely, whether the court abused its discretion in refusing to issue a judgment of contempt against the plaintiff. "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [party] were in contempt of a court order. . . . We review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Mekrut* v. *Suits*, 147 Conn. App. 794, 799, 84 A.3d 466 (2014).

The court here determined that there was no requirement in the clear and unambiguous separation agreement with which the plaintiff could have failed to comply by refusing to pay any portion of his children's orthodontic expenses. The court found that section 8, the relevant section of the separation agreement, "contains absolutely no language that obligates the plaintiff to pay for orthodontic bills for the two minor children and is not subject to any alternative interpretation." Moreover, the defendant has failed to produce any viable argument as to why these factual findings should be disturbed. Accordingly, the trial court did not abuse its discretion in denying the defendant's motion for contempt.

## II

We decline to address the defendant's second claim that the court abused its discretion by denying her motion to reargue because it has been inadequately briefed by the defendant. The defendant, after quoting the applicable procedure for and purpose of filing a motion to reargue and the appropriate standard of review on appeal, sets forth one paragraph of argument without any analysis or citations to relevant case law.[8]

The defendant's argument is based on nothing more than mere assertion devoid of any authoritative support or real analysis. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Notopoulos* v. *Statewide Grievance Committee*, 85 Conn. App. 425, 433, 857 A.2d 424 (2004), aff'd, 277 Conn. 218, 890 A.2d 509, cert. denied, 549 U.S. 823, 127 S. Ct. 157, 166 L. Ed. 2d 39 (2006).

### III

The defendant finally claims that the court abused its discretion by applying the legal principles of contract construction to the present claim instead of relying upon the child support guidelines to determine the parties' intent. We disagree. "It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact. . . . When the language is clear and unambiguous, however, the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law. . . .

"It must be noted, however, that the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . Finally, in construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Isham* v. *Isham*, 292 Conn. 170, 180–82, 972 A.2d 228 (2009).

We conclude that the court did not abuse its discretion by applying principles of contract construction to the interpretation of the parties' separation agreement. The terms of the separation agreement were clear and unambiguous and did not obligate the plaintiff to contribute financially to the costs incurred by the defendant for orthodontic care for two of their minor children. The court also did not err by finding that there were no ambiguous provisions of the agreement that required it to look outside the four corners of the agreement to the child support guidelines for clarification of the parties' intent.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The parties have three children together, two of whom were, at all times relevant to the underlying motions, minors for whom the defendant sought orthodontic care.

[2] The separation agreement provides in relevant part: "13.1 Subject to the provisions of this Agreement, each party has remised, released and forever discharged, and by these presents does for himself, or herself, and his or her heirs, legal representatives, executors, administrators and assigns, remise, release and forever voids, releases, and discharges the other of and from all cause or causes of action, claims, rights, contracts previously executed, or demands whatsoever, in law or in equity, which either of the parties hereto ever had, now has, or may hereafter have against the other, except any or all cause or causes of action for dissolution, it being the intention of the parties that subsequent to the execution of this Agreement, there shall be as between them only such rights and obligations as are specifically provided in this Agreement.

* * *

"14.1 The [defendant] is being represented by an attorney of her own choosing and selection, and the [plaintiff] is being represented by an attorney of his own choosing and selection, and each of the parties fully understands the terms, covenants, and conditions of this Agreement and is of the belief that said Agreement is fair, just, adequate and reasonable as to each of them, and after consideration, freely and voluntarily accepts and agrees to said terms, covenants, conditions and provisions.

"14.2 Both the legal and practical effects of this Agreement in each and every respect have been fully explained to both parties by their respective counsel and they both acknowledge that it is a fair Agreement and is not the result of any fraud, duress or undue influence exercised by either party upon the other, or by any person or persons upon either, and they further agree this Agreement contains the entire understanding of the parties. There are no representations, promises, warranties, covenants or undertakings other than those expressly set forth herein.

* * *

"16.1 It is understood and agreed that this contract is entered into under the laws of the State of Connecticut and in the construction or execution of the same wherever and whenever undertaken, the laws of the State of Connecticut shall be deemed to apply and prevail."

[3] The agreement contained no other provisions, apart from § 8, with respect to unreimbursed or uninsured medical expenses for the minor children.

[4] General Statutes § 46b-66 (a) provides in relevant part: "In any case under this chapter where the parties have submitted to the court an agreement concerning the custody, care, education, visitation, maintenance or support of any of their children or concerning alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness to have physical custody of or rights of visitation with any minor child, in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. . . ."

[5] The defendant made two other claims in her motion for contempt regard-

ing the minor children's postsecondary education and parenting plan issues between the parties. The parties resolved these claims, and they are not before us on appeal.

[6] The following exchange occurred at the hearing:

"[The Plaintiff's Counsel]: Ma'am, it's true that you can't point to anything in your separation agreement dated [June 23, 2010] that would provide for [the plaintiff] to contribute to orthodonture specifically, correct?

"[The Defendant]: That's correct."

[7] The plaintiff testified at the hearing as follows:

"[The Plaintiff's Counsel]: And is there anything in your agreement that would call for you to pay for . . . the orthodonture in this matter?

"[The Plaintiff]: No."

[8] The entirety of the defendant's argument is as follows: "The trial court should have allowed reargument on the issue of contempt as the court failed to give the defendant appellee a fair chance at being heard on the merits of the issue. A reasonable court would have reviewed the definitions of unreimbursed medical expenses, and the child support guidelines when determining issues of allocation and unpaid medical expenses, to wit orthodontic care costs."

---