******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARY L. BAUER *v.* JEFFREY W. BAUER
(AC 38165)

Alvord, Sheldon and Bear, Js.

*Argued January 10—officially released June 6, 2017*

(Appeal from Superior Court, judicial district of Hartford, Olear, J. [dissolution judgment]; Ficeto, J. [motion for modification; motion for contempt; articulation])

*James M. Ruel*, with whom, on the brief, was *Joshua Feldman*, for the appellant (plaintiff).

*Steven R. Dembo*, with whom, on the brief, were *Caitlin E. Kozloski* and *P. Joanne Burgh*, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, Mary L. Bauer, appeals from the postjudgment rulings of the trial court denying her motion for contempt and granting the motion of the defendant, Jeffrey W. Bauer, for modification of his alimony obligation.[1] The plaintiff claims that the court improperly (1) determined that the defendant's failure to pay court-ordered alimony was not wilful, (2) failed to conclude that the defendant's conduct was culpable when considering his motion for modification, and (3) failed to admit certain evidence that she offered relative to the criteria set forth in General Statutes § 46b-82.[2] We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The parties were married on October 20, 1985; their son was born in 1994. On December 18, 2008, the plaintiff filed a marital dissolution action on the ground that the marriage had broken down irretrievably. On May 23, 2011, the court, *Olear, J.*, rendered judgment dissolving the parties' marriage. The judgment incorporated by reference a "divorce settlement agreement" (agreement) dated May 20, 2011.

Section 5.1 of the agreement provides in relevant part: "[The defendant] shall pay to [the plaintiff] alimony of $10,417 per month, payable semimonthly in accord with his employment pay schedule. . . . Alimony in this section 5 is based on annual gross income of [the defendant] of $436,000 and $32,500 for [the plaintiff]."[3] Section 5.7 of the agreement provides that "[t]he amount of all alimony in this section 5 shall be modifiable upon a substantial change in the circumstances of the parties." In addition to other provisions, the agreement included an attached exhibit B, which set forth the parties' assets at the time of the dissolution and the equal distribution of those assets.

Since 2002, the defendant had been employed by Citco Fund Services as its "global head of connectivity." On or about December 11, 2013, without any prior notification, he was informed that his employment was terminated as of that date because of a restructuring of his department. His employer provided severance pay from the date of his termination until September 15, 2014. The defendant continued to pay his court-ordered alimony until he no longer received his severance pay.

On August 1, 2014, the defendant filed a postjudgment motion for the modification of his alimony obligation on the ground that his employment had terminated and his severance pay was to end in approximately six weeks. He stopped paying alimony when his severance pay ended. On October 15, 2014, the plaintiff filed a postjudgment motion for contempt against the defendant, alleging nonpayment of the court-ordered alimony payments; she amended her motion on February 23, 2015.

The court scheduled a hearing on the parties' motions. On December 18, 2014, and March 2, 2015, the court, *Ficeto, J.*, heard testimony from the plaintiff and the defendant and admitted forty-nine full exhibits. Following the hearing, the parties submitted briefs summarizing their respective positions. On April 16, 2015, the court issued its memorandum of decision in which it denied the plaintiff's motion for contempt and reduced the defendant's monthly payment of alimony to $2500. The plaintiff filed a motion for reargument and reconsideration of the court's decision, which was denied by the court without discussion on July 1, 2015. This appeal followed.

I

The plaintiff's first claim is that "[t]he trial court's determination that the defendant was not in contempt of court, despite the admission of clear and convincing evidence[4] that his failure to pay court-ordered alimony to the plaintiff was wilful, was an abuse of discretion." Specifically, she argues that the defendant admitted that he did not pay alimony from September, 2014, through the date of the hearing and that the evidence clearly demonstrated that his noncompliance was wilful. We are not persuaded.

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [defendant] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . A finding that a person is or is not in contempt of a court order depends on the facts and circumstances surrounding the conduct. The fact that an order has not been complied with fully does not dictate that a finding of contempt must enter. . . . [It] is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Citations omitted; internal quotation marks omitted.) *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 326, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009).

The inability of an obligor to pay court-ordered alimony, without fault on his part, is a good defense to a contempt motion. The burden of proving an inability to pay rests with the obligor. Whether the obligor has established his inability to pay by credible evidence is a question of fact. The obligor must establish that he cannot comply, or was unable to do so. It is then within the sound discretion of the court to deny a claim of contempt when there is an adequate factual basis to explain the failure to pay. *Afkari-Ahmadi* v. *Fotovat-Ahmadi*, 294 Conn. 384, 397–98, 985 A.2d 319 (2009).

"[The] trial court is endowed with broad discretion

in domestic relations cases. . . . As an appellate court, we do not review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . The purpose of our analysis is to decide whether the trial court's conclusion was reasonable. Because the trial court has the advantage of reviewing and assessing the demeanor, attitude and credibility of the witnesses, it is better equipped than we are to assess the circumstances surrounding the family proceeding before it. . . . Every reasonable presumption will be made in favor of the court's proper exercise of discretion." (Citations omitted; internal quotation marks omitted.) *Meehan* v. *Meehan*, 40 Conn. App. 107, 110–11, 669 A.2d 616, cert. denied, 236 Conn. 915, 673 A.2d 1142 (1996).

In reviewing the propriety of the court's decision to deny the plaintiff's motion for contempt, we first review the factual findings of the court that led to its determination. The clearly erroneous standard is the well settled standard for reviewing a trial court's factual findings. "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Mettler* v. *Mettler*, 165 Conn. App. 829, 836, 140 A.3d 370 (2016).

In the present case, the court made the following factual determinations: (1) the defendant was involuntarily separated from his employment; (2) the separation came "as a surprise" and he had no prior notification; (3) the defendant continued to pay his court-ordered alimony until he no longer received his severance pay; (4) the defendant has been "vigilant," but unsuccessful, in his attempts to secure permanent employment; (5) the defendant formed a one person limited liability company to provide per diem services as a consultant to a software company and is paid $800 per day on the days that he works; (6) the contract with the software company has expired, but the defendant continues to provide services under the same contractual terms on a per diem basis; (7) the limited liability company receives 1099 forms for its income and is responsible for the payment of all taxes and expenses; (8) the defendant receives no vacation pay, holiday pay or any other benefits; (9) the defendant's average weekly net income is $1913; (10) following the termination of his employment, the defendant has invaded his retirement funds in the amount of $45,000 to pay his living expenses; (11) the defendant has paid expenses for property he purchased in Massachusetts prior to the termination of his employment from marital property awarded to him in the dissolution judgment; (12) the defendant paid his alimony obligation until he no longer had a salary or severance pay from which he could make those payments; and (13) there was no evidence

to suggest that the defendant's expenditures prior and subsequent to September, 2014, the date his severance pay ended, were made from any funds other than his share of the marital estate in the dissolution judgment.

The testimony of the defendant at the hearing, which the court credited, supports the factual findings of the court. The agreement expressly provided that the amount of alimony was "based on annual gross income . . . of $436,000" for the defendant and $32,500 for the plaintiff. After his severance pay ended, the defendant's weekly net income was reduced to $1913, which he earned as an independent contractor. Given these circumstances, and because there was an adequate factual basis presented to explain the defendant's failure to continue payment of his alimony obligation, it was within the trial court's discretion to deny the plaintiff's motion for contempt.

## II

The plaintiff's next claim is that the "court's determination that the defendant met his burden to prove a substantial change of circumstances sufficient to justify a modification of alimony was clearly erroneous due to the evidence admitted [that] demonstrated [his] culpable conduct." Relying on the cases of *Olson* v. *Mohammadu*, 310 Conn. 665, 81 A.3d 215 (2013), *Sanchione* v. *Sanchione*, 173 Conn. 397, 378 A.2d 522 (1977), and *Mekrut* v. *Suits*, 147 Conn. App. 794, 84 A.3d 466 (2014), the plaintiff argues that the defendant's "extravagant spending," which took place after the loss of his employment, constituted "culpable conduct" that did not excuse his claimed "inability to pay" his alimony obligation. In essence, the plaintiff's position is that the defendant's alleged substantial change in circumstances was brought about by his own "recklessness . . . while unemployed," and, accordingly, the court should have denied his motion for modification of alimony.

As previously noted, "[t]he well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts." (Internal quotation marks omitted.) *Malpeso* v. *Malpeso*, 165 Conn. App. 151, 175, 138 A.3d 1069 (2016). The present case involves the postjudgment modification of a support order. Modification of alimony is governed by General Statutes § 46b-86, subsection (a) of which provides in relevant part: "Unless and to the extent that the decree precludes modification . . . an order for alimony . . . may, at any time thereafter, be . . . altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . ." General Statutes § 46b-86 (a). "As the party seeking modification, the defendant had the burden of proving a substantial change in circumstances. . . .

"We previously have explained the specific method by which a trial court should proceed with a motion brought pursuant to § 46b-86 (a). When presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the [General Statutes] § 46b-82 criteria, make an order for modification. . . . The court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties. . . . Simply put, before the court may modify an alimony award pursuant to § 46b-86, it must make a threshold finding of a substantial change in circumstances with respect to one of the parties." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Schade* v. *Schade*, 110 Conn. App. 57, 62–63, 954 A.2d 846, cert. denied, 289 Conn. 945, 959 A.2d 1009 (2008). "In addition, [w]e recognize that a party seeking modification of financial orders incident to a marital dissolution judgment must clearly and definitely establish an uncontemplated substantial change of the circumstances of either party which demonstrates that continuation of the prior order would be unfair and improper." (Internal quotation marks omitted.) *Fulton* v. *Fulton*, 156 Conn. App. 739, 746, 116 A.3d 311 (2015).

The three cases cited by the plaintiff in support of her claim address the conduct of obligors that precluded a determination that there had been a substantial change in circumstances. In *Sanchione* v. *Sanchione*, supra, 173 Conn. 407, our Supreme Court held: " 'Inability to pay' does not automatically entitle a party to a decrease of an alimony order. It must be excusable and not brought about by the defendant's own fault." Id. Factors to be considered include "whether his inability to pay was a result of his own extravagance, neglect, misconduct or other unacceptable reason . . . ." Id. *Olson* and *Mekrut* further provide that "if a party's voluntary action gives rise to the alleged substantial change in circumstances warranting modification, the [trial] court must assess the motivations underlying the voluntary conduct in order to determine whether there is *culpable* conduct foreclosing a threshold determination of a substantial change in circumstances." (Emphasis in original; internal quotation marks omitted.) *Olson* v. *Mohammadu*, supra, 310 Conn. 684; *Mekrut* v. *Suits*, supra, 147 Conn. App. 802. The trial court concluded, and we agree, that the holdings of those cases do not apply under the circumstances of this case.

As noted by the trial court, the defendant's loss of employment was involuntary and totally unanticipated. The defendant continued to pay his alimony obligation until his severance pay ended. At that point, the defen-

dant's income was reduced from an annual gross income of approximately $446,000, to an average net weekly income of $1913. Although the defendant had been "vigilant in his attempts [in] seeking employment," as found by the court, his efforts had not been successful. The defendant had withdrawn moneys from his retirement account, which had been awarded to him in the dissolution judgment, in order to pay his living expenses. When questioned extensively with respect to the moneys spent on his Massachusetts property, the defendant testified that he used the proceeds from the sale of the marital residence and his savings that he received as part of the distribution of the marital assets. The court found this testimony credible, for it found that "[t]here was no evidence to suggest that the defendant's expenditures were from anything other than his share of the marital estate."

There is no authority for the plaintiff's claim that the defendant was obligated to save money from his severance pay or to liquidate assets that he had acquired at the time of the dissolution judgment in order to continue the payment of his alimony obligation.[5] All of the court's findings are supported by the record. The court did not find the defendant's conduct to be culpable, and the plaintiff has failed to demonstrate otherwise. As such, we cannot conclude that the court improperly determined that the defendant proved that he had suffered a substantial change in circumstances when he was terminated from his employment.

### III

The plaintiff's final claim is that the "court's refusal to admit evidence relevant to the second prong of the modification analysis was clearly erroneous and warrants a new trial." The plaintiff argues that even if there was a substantial change in circumstances, the court then had to consider "without limitation" all of the factors set forth in § 46b-82 in determining the amount, if any, of the modification.[6] According to the plaintiff, the court was required to consider all of the defendant's assets and all of his expenditures from the moment he was told that his employment was being terminated because he "was obligated to budget the entirety of his financial resources so as to meet his alimony obligation." The plaintiff requests that we "remand this matter to the trial court for a new hearing, at which the trial court should admit credible testimony and evidence with regard to the defendant's 'station,' which the court must consider and analyze in an alimony modification context . . . ."[7]

The plaintiff's claim is an evidentiary claim. "The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the

court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . In addition, [b]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its [exclusion] is harmless." (Internal quotation marks omitted.) *Brown* v. *Brown*, 130 Conn. App. 522, 531–32, 24 A.3d 1261 (2011).

The plaintiff does not identify what evidence she offered that the court ruled to be inadmissible. There is no reference to exhibits marked for identification or the offer of proof made to the court at the time she sought their admission.[8] She simply makes broad statements about the defendant's "nonessential expenses," the "moneys expended to improve the [Massachusetts] home," and the defendant's "extravagant vacations," and claims that the court should have admitted such evidence to show the defendant's "station while unemployed." Our review of the transcripts of the hearing reveals that the plaintiff made these same arguments before the court and that she was afforded considerable latitude in questioning the defendant about his expenditures. Moreover, the court admitted, frequently over the defendant's objection, thirty exhibits submitted by the plaintiff. Included among those exhibits were the defendant's credit card statements, bank statements, and a construction expense sheet for the Massachusetts property. The plaintiff provides no explanation as to why the excluded exhibits provided different and relevant information from the admitted exhibits, or how the admission of the excluded exhibits would have affected the result in this case. Accordingly, we cannot conclude that the court abused its discretion in its evidentiary rulings.

The judgment is affirmed.

[1] The court also granted the defendant's postjudgment motion for modification of the educational support order for the parties' twenty year old son, and denied the plaintiff's postjudgment motion for payment of legal fees, but the plaintiff has not challenged those rulings in this appeal.

[2] General Statutes § 46b-82 (a) provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, [and the] estate and needs of each of the parties . . . ."

[3] Section 5.4 of the agreement provides for additional alimony based on the defendant's receipt of "gross bonus monies."

[4] "Contempts of court may . . . be classified as either direct or indirect, the test being whether the contempt is offered within or outside the presence of the court." (Internal quotation marks omitted.) *Brody* v. *Brody*, 315 Conn.

300, 317, 105 A.3d 887 (2015). A refusal to comply with a court-ordered payment of alimony is an indirect contempt of court because it occurs outside the presence of the trial court. See id. "[F]indings of indirect civil contempt must be supported by clear and convincing evidence." Id., 302–303.

[5] The trial court correctly noted that it could not order a party to sell or deplete assets awarded at the time of the dissolution in order to satisfy an alimony award. "[T]he assignment of property may only be made at the time of the marital dissolution and it is not thereafter subject to modification as are periodic orders. . . . Dispositions of property made at the time of the decree under [General Statutes] § 46b-81 are not subject to modification, even if there should be a change of circumstances." (Citation omitted; internal quotation marks omitted.) *Rosato* v. *Rosato*, 77 Conn. App. 9, 14, 822 A.2d 974 (2003).

[6] We note that the trial court "need not . . . make explicit reference to the statutory criteria [set forth in § 46b-82] that it considered in making its decision or make express findings as to each statutory factor." (Internal quotation marks omitted.) *Bornemann* v. *Bornemann*, 245 Conn. 508, 539, 752 A.2d 978 (1998). "[T]he trial court has discretion to determine the weight to give to each of the criteria in light of the specific facts and circumstances of the case before it." *Simms* v. *Simms*, 283 Conn. 494, 509 n.16, 927 A.2d 894 (2007). "There is no additional requirement that the court specifically state how it weighed the statutory criteria or explain in detail the importance assigned to each statutory factor." (Internal quotation marks omitted.) *Brown* v. *Brown*, 130 Conn. App. 522, 527, 24 A.3d 1261 (2011).

[7] We go back to a 1988 decision of our Supreme Court to find a fulsome discussion of "station." "The most pertinent definition of 'station' in Webster, Third New International Dictionary, is 'social standing.' A person's social standing is strongly correlated to his standard of living, although other factors may be important as well. Our courts have frequently considered the standard of living enjoyed by spouses in determining alimony or in dividing marital property." *Blake* v. *Blake*, 207 Conn. 217, 232, 541 A.2d 1201 (1988).

[8] Practice Book § 67-4 (d) (3) provides: "When error is claimed in any evidentiary ruling in a court or jury case, the brief or appendix shall include a verbatim statement of the following: the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling."