******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELIZABETH METTLER *v.* KIRSTEN METTLER
(AC 37844)

Lavine, Beach and Mullins, Js.

*Submitted on briefs March 7—officially released May 31, 2016*

(Appeal from Superior Court, judicial district of New Haven, Gould, J.)

*David N. Rubin*, filed a brief for the appellant (plaintiff).

*Susan E. Nugent*, filed a brief for the appellee (defendant).

*Opinion*

LAVINE, J. The plaintiff, Elizabeth Mettler, appeals from the judgment of the trial court finding her in contempt for wilfully failing to pay the defendant, Kirsten Mettler, one half of certain of their child's extracurricular activity expenses, pursuant to a postdissolution agreement that the parties had entered into and that was approved by the court. On appeal, the plaintiff claims that the trial court erred by (1) holding her in civil contempt based on an ambiguous court order, (2) failing to admit extrinsic evidence regarding the intent of the parties with respect to the agreement, and (3) ordering the plaintiff to pay a clearly erroneous amount of extracurricular activity fees.[1] We conclude that the agreement was ambiguous, and, thus, we reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The parties were married on April 1, 2000. They had one child, who was born on February 5, 2001. On April 22, 2009, the parties' marriage was dissolved after a lengthy and hotly contested dissolution trial. The court initially ordered the child into the custody of the Commissioner of Children and Families. The court ordered that after the child's reunification with one or both parents, the plaintiff and defendant would have joint legal custody of the child. On June 11, 2009, the court granted the parties joint legal and physical custody. The order stated that the parties would not make any unilateral decisions regarding the child's extracurricular activities, including in which summer activities she would participate.

On June 10, 2010, the court awarded the defendant sole custody of the child. The defendant has had sole legal and physical custody of the child since that date. On July 26, 2011, the parties entered into an agreement regarding ongoing financial issues.[2] The guardian ad litem for the child approved the agreement on behalf of her ward, and the court entered the agreement as an order of the court. The parties agreed that the plaintiff would pay $236 per week in child support. In addition to their agreement on the child support payments, the parties agreed that they would share additional expenses for their child's extracurricular activities. The relevant provision stated: "Effective August 1, 2011, the parties shall share equally the child's agreed upon activity expenses concerning swimming, guitar, tennis and summer camps."

On June 6, 2014, the defendant filed a motion for contempt alleging that the plaintiff had failed to comply with the July 26, 2011 court-approved agreement because she had not paid the defendant for any of the expenses related to the child's swimming, guitar, tennis, and summer camps incurred since August 1, 2011. On January 20, 2015, the court held a hearing on the motion

during which the plaintiff, the defendant, and the guardian ad litem for the child,[3] Attorney Anne Epstein, testified. The plaintiff attempted to call Attorney Charles Willinger, who previously had represented her and participated in the drafting of the agreement, as a witness, and the defendant objected. The court sustained the defendant's objection on the ground that Willinger's testimony would constitute extrinsic evidence, and it did not allow him to testify. The court stated that it would not allow Willinger to testify because the meaning of the agreement was to be determined from the plain language of the agreement and extrinsic evidence was not necessary.

The court issued a memorandum of decision on March 12, 2015, granting in part the defendant's motion for contempt. See footnote 4 of this opinion. The court found that the plaintiff intentionally and wilfully refused and neglected to pay the defendant the portion she owed for the child's swimming, guitar, tennis, and summer camp expenses from August 1, 2011 to the date of the hearing. The court concluded that the defendant continuously had provided the plaintiff with notice of the expenses and that the plaintiff at all times was aware of the expenses. The court found that the plaintiff owed an arrearage of $17,441.45 and, on the basis of its review of her financial affidavit, that the plaintiff had the ability to pay the arrearage. It ordered the plaintiff to pay the arrearage in three payments to purge the contempt.

The court concluded that the language of the agreement was clear and unambiguous. It stated that " 'agreed upon activity expense' can only be interpreted as already agreed upon. Webster's Dictionary 5th Edition defines 'agree' as to have the same opinion and is 'often followed by on or upon. The agreement does not read 'agree' upon, implying that they must first agree. Instead, it reads 'agreed upon activity expense[s],' which implies that the activity was agreed upon and the agreement addressed the expenses associated or 'concerning' particular activities—swimming, guitar, tennis, and summer camps." Furthermore, the court found that the evidence at the hearing showed that the specified activities were agreed upon by the parties when they executed the July 26, 2011 agreement. The court noted that both parties acknowledged that the child had been involved in the activities at issue both prior to and subsequent to the July 26, 2011 agreement.

The plaintiff filed a motion to reargue, which the court denied on April 6, 2015. The plaintiff subsequently filed a motion for articulation on May 4, 2015. On May 29, 2015, the court issued its articulation, iterating that it had found that the "parties had already agreed upon the subject activities, the parties' prior agreement and subsequent court orders containing the agreement [were] clear. There was no evidence that either party

had withdrawn that prior agreement, or had filed, and had been granted, a motion to modify that prior agreement." The court also noted that it had found that the expenses concerning the child's participation in swimming, guitar, tennis, and summer camps were reasonable. This appeal followed.[4]

The plaintiff claims that the trial court abused its discretion by finding her in contempt because the court order that she was found to have violated was ambiguous. The plaintiff argues that the provision in the agreement stating that "the parties shall share equally the child's agreed upon activity expenses concerning swimming, guitar, tennis and summer camps" is ambiguous because it can be interpreted to mean that she did not incur the obligation to pay for her child's participation in the activities unless the defendant consulted with her and obtained her consent about the cost of each activity before the child was enrolled. She further argues that the trial court's conclusion that the language of the agreement was clear and unambiguous renders the words "agreed upon" superfluous in violation of the law of contract interpretation that "militates against interpreting a contract in a way that renders the provision superfluous." We agree that the language at issue is ambiguous.

The following standard of review and legal principles are relevant to this claim. "First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding. . . . A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [party] were in contempt of a court order. . . . We review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses." (Citation omitted; internal quotation marks omitted.) *Mekrut* v. *Suits*, 147 Conn. App. 794, 799, 84 A.3d 466 (2014).

"In domestic relations cases, [a] judgment rendered in accordance with . . . a stipulation of the parties is to be regarded and construed as a contract." (Internal quotation marks omitted.) *Lisko* v. *Lisko*, 158 Conn. App 734, 738–39, 121 A.3d 722 (2015). Accordingly, our resolution of the plaintiff's claim is guided by the general principles governing the construction of contracts.

"It is well established that [a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Celini* v. *Celini*, 115 Conn. App. 371, 377, 973 A.2d 664 (2009). "Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . . In contrast, an agreement is ambiguous when its language is reasonably susceptible of more than one interpretation. . . . Nevertheless, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 355, 999 A.2d 713 (2010).

On the basis of our review of the record, we conclude that the plain language of the subject provision is ambiguous because it is reasonably susceptible to more than one interpretation. There is the interpretation from the trial court's memorandum of decision that the past tense "agreed upon" refers to "activity," and the phrase "concerning swimming, guitar, tennis and summer camps" defines what the "agreed upon" activities are. Under this interpretation, the provision means that the parties had previously agreed that their child would participate in swimming, guitar, tennis, and summer camps, and they would each pay one half of the expenses for those activities.

The plaintiff proposes that the provision can also be read to mean that the defendant was required to seek her prior approval of the expenses for the listed activities before she incurred the obligation to pay for them. She proposes that because the four activities that the

child would participate in and for which the parties would share expenses are explicitly mentioned in the agreement, the words "agreed upon activity" are all adjectives modifying "expenses." Under this interpretation, the expenses would have to be agreed upon. There is no other language in the agreement that demonstrates that the parties had agreed on a specific amount at the time the court approved the agreement. The plaintiff thus argues that the parties had to agree on the expenses for the listed activities prior to her incurring the obligation to pay one half of the expenses. This interpretation of the plain language of the provision is also reasonable.

We understand that in highly contentious family cases, particularly those involving children, the trial court may seek to sever the Gordian knot created by parents who feud over each and every issue, no matter how large or small. Sympathetic though we may be with the desire of a trial judge to resolve contentious issues, we are constrained in this case to determine if the language at issue is ambiguous. We conclude that it is and, accordingly, reverse the judgment of contempt and remand the case for further proceedings.[5]

Because we conclude that the subject language is ambiguous and the judgment of contempt must be reversed, we need not address the plaintiff's other claims that the court erred in denying her the opportunity to present extrinsic evidence and erred in its calculation of the amount she owed for the activity expenses. Because the language is ambiguous, the parties will have the opportunity to present extrinsic evidence regarding their intent at the hearing on remand. See, e.g., *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 106, 84 A.3d 828 (2014).

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

[1] The plaintiff raises four additional claims on appeal. Specifically, she claims that the trial court erred in failing to determine the intention of the parties regarding the agreement, concluding that the language of the agreement was clear and unambiguous, ordering her to pay for activities to which she did not consent, and denying her motion to reargue requesting that her former attorney be allowed to testify and present extrinsic evidence regarding the intent of the parties. These claims are variations of the three claims set forth in this opinion and are resolved by our analysis of those claims.

[2] The litigation between the parties has been contentious. At the time of the agreement, there were more than 600 entries in the court file.

[3] Although the defendant has sole legal and physical custody of the child, the guardian ad litem testified at the hearing that she remained involved to help facilitate contact between the plaintiff and the child.

[4] We note that the defendant's motion for contempt included a claim that the plaintiff failed to pay her share of medical expenses pursuant to an additional section of the agreement. The court did not address this claim in finding the plaintiff in contempt for failing to pay the activity expenses. Generally, a ruling that does not resolve all of the issues raised in a motion for contempt is not an appealable final judgment. See *Bucy* v. *Bucy*, 19 Conn. App. 5, 7–8, 560 A.2d 483 (1989). *Bucy*, however, is not applicable to cases in which a finding of contempt is accompanied by coercive action ordered by the court. See *Khan* v. *Hilyer*, 306 Conn. 205, 215, 49 A.3d 996 (2012). In the present case, although the trial court did not rule on the claim

for medical expenses, it has required the plaintiff to begin making arrearage payments for the activity expenses pursuant to a schedule established by the court. Our Supreme Court has held that "a civil contempt order requiring the contemnor to incur a cost or take a specific action . . . satisfies the second prong of [*State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983)] and, therefore, constitutes an appealable final judgment." Id., 217.

[5] The defendant argues that because he has sole custody of the child and thus has decision-making authority over which activities the child will participate in, he had no obligation to consult with the plaintiff prior to enrolling the child in the listed activities. The defendant as the parent with sole legal custody clearly has the ultimate authority to make decisions regarding the welfare of the child, including which activities the child participates in. This rule does not, however, resolve the ambiguity of whether he was required to consult with the plaintiff regarding the expenses prior to enrolling the child in the listed activities for the plaintiff to incur the obligation to pay for one half of the expenses.

———————————————