******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgment of the trial court resolving certain postjudgment motions. Following the dissolution of their marriage, the parties entered into a stipulation governing various parenting matters and child support, which was approved by and made an order of the court. On appeal, the plaintiff claimed that the trial court improperly granted certain motions for contempt filed by the defendant, denied his motion for contempt, and denied his motion to modify his child support obligation. *Held*:

1. The trial court did not abuse its discretion when it granted the defendant's May, 2017 motion for contempt and held the plaintiff in contempt for violating the stipulation by failing to make arrangements for the parties' minor children when he could not be with them during his scheduled parenting time as the "custodial parent": although "custodial parent" was not defined in the stipulation, the relevant paragraph, when read within the context of the other provisions, made it clear that it refered to the parent who was meant to have the children at a given time according to the stipulation, and, thus, the stipulation was sufficiently clear and unambiguous so as to support a judgment of contempt; moreover, the trial court reasonably could have found that the plaintiff had wilfully violated the stipulation, as a review of the canvass that occurred before the court accepted the parties' stipulation and made it an order plainly indicated that the plaintiff attributed the same meaning to the term "custodial parent" as the defendant, and demonstrated that the plaintiff knew he had to make alternate arrangements for the children during his parenting time if he was unavailable.

2. This court declined to review the plaintiff's claim that the trial court improperly denied his September, 2017 motion for contempt, as that claim was inadequately briefed, the plaintiff having failed to provide any analysis or to demonstrate, aside from unsupported assertions, how the court's ruling that his motion was barred by the doctrine of res judicata was improper.

3. The trial court did not abuse its discretion when it granted the defendant's August, 2017 motion for contempt and found the plaintiff in contempt for violating the stipulation by failing to contribute toward the purchase of a vehicle for the parties' children: the stipulation was sufficiently clear and unambiguous so as to support a judgment of contempt, as although the plaintiff correctly pointed out that the stipulation did not specify who would purchase the vehicle or when it would be purchased, he failed to explain or provide any legal authority to show that the absence of such details made the stipulation ambiguous, and this court could not conclude that the language of the stipulation was reasonably susceptible to more than one interpretation; moreover, the trial court reasonably could have found that the plaintiff had wilfully violated the stipulation, as the plaintiff's claims that he had offered two free vehicles, that he was not timely given the proof of purchase that he had asked for, and that the defendant acted unilaterally despite the stipulation provision that provided that the plaintiff had final decision-making authority, did not demonstrate how his failure to contribute the sum that he had contractually agreed to provide was not wilful, and the court's conclusions were supported by the evidence.

4. The trial court did not abuse its discretion in denying the plaintiff's motion to modify his child support obligation due to a substantial change in circumstances; the plaintiff bore the burden of persuading the court that his circumstances had changed substantially, and although the plaintiff introduced testimony and documentary evidence to show that his income had declined since the parties entered into the stipulation, the court, as the fact finder, was free to discredit his testimony, and in the absence of any credible evidence that the plaintiff's income had

declined, the court reasonably could have found that the plaintiff had failed to prove a substantial change in his circumstances.

Argued March 13—officially released July 23, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Abery-Wetstone, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Shluger, J.*, granted the defendant's motion for contempt; subsequently, the court, *Klatt, J.*, denied the plaintiff's motion for contempt; thereafter, the court, *Klatt, J.*, granted the defendant's motion for contempt; subsequently, the court, *Klatt, J.*, denied the plaintiff's motion to modify child support, and the plaintiff appealed to this court; thereafter, the court, *Klatt, J.*, granted the plaintiff's motion for articulation. *Affirmed.*

*Jean-Pierre Bolat*, self-represented, the appellant (plaintiff).

*Richard W. Callahan*, for the appellee (defendant).

*Opinion*

ELGO, J. In this contentious postdissolution case, the self-represented plaintiff, Jean-Pierre Bolat, appeals from various postdissolution judgments rendered by the trial court in favor of the defendant, Yumi S. Bolat. On appeal, the plaintiff claims that the court improperly (1) granted the defendant's May 9, 2017 motion for contempt, denied his September 19, 2017 motion for contempt, and granted the defendant's August 23, 2017 motion for contempt; and (2) denied his motion to modify his child support obligation. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to this appeal. The parties' marriage was dissolved on June 21, 2011. They have three children together. On April 11, 2017, the parties entered into a stipulation governing various parenting matters and child support, which was approved by and made an order of the court (stipulation). Pursuant to the stipulation, the parties shared joint legal custody, and the children primarily resided with the defendant. It also provided for the two elder children to use the plaintiff's residence in Wallingford as their residence for school purposes and to finish high school at Sheehan High School in Wallingford. The stipulation further provided that "the [plaintiff] shall have parenting time to include every other weekend from Friday after school until Monday when school commences or [9 a.m.]." It also stated that "[i]f the custodial parent cannot be with the children, it is the custodial parent's responsibility to make arrangements for the children unless the noncustodial parent agrees in writing to take the children."

Subsequent to entering into the stipulation, both parties filed various motions with the court. On August 8, 2017, the court granted the defendant's May 9, 2017 motion for contempt and found the plaintiff in contempt for failing to make arrangements for the children when he could not take them during his scheduled parenting time. On October 4, 2017, the court denied the plaintiff's September 19, 2017 motion for contempt when it determined that the issues raised by the plaintiff's motion were barred by the doctrine of res judicata. On October 19, 2017, the court granted the defendant's August 23, 2017 motion for contempt and found the plaintiff in contempt for failing to pay $3000 toward the purchase of a vehicle for their children. On November 21, 2017, the court denied the plaintiff's July 31, 2017 motion to modify his child support obligation, concluding that the plaintiff had "failed to meet his burden of showing a significant change in his financial circumstances . . . ." From these judgments the plaintiff now appeals.

I

CONTEMPT CLAIMS

The plaintiff first claims that the court improperly

(1) granted the defendant's May 9, 2017 motion for contempt, (2) denied his September 19, 2017 motion for contempt, and (3) granted the defendant's August 23, 2017 motion for contempt. We disagree.

We begin by setting forth our standard of review and relevant legal principles. "[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007).

"Civil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts. . . . Whether an order is sufficiently clear and unambiguous is a necessary prerequisite for a finding of contempt because [t]he contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind. . . . It is also logically sound that a person must not be found in contempt of a court order when ambiguity either renders compliance with the order impossible, because it is not clear enough to put a reasonable person on notice of what is required for compliance, or makes the order susceptible to a court's arbitrary interpretation of whether a party is in compliance with the order." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 695.

The order at issue is the stipulation, entered into by the parties, which was made an order of the court. "In domestic relations cases, [a] judgment rendered in accordance with . . . a stipulation of the parties is to be regarded and construed as a contract. . . . It is well established that [a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not

torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . . In contrast, an agreement is ambiguous when its language is reasonably susceptible of more than one interpretation. . . . Nevertheless, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) *Mettler* v. *Mettler*, 165 Conn. App. 829, 836–37, 140 A.3d 370 (2016).

## A

The plaintiff claims that the court improperly granted the defendant's May 9, 2017 motion for contempt when it held him in contempt for violating the stipulation by failing to make arrangements for the children when he could not be with them during his scheduled parenting time. Specifically, the plaintiff argues that the court's holding was improper because the stipulation is ambiguous and there was no evidence that his violation was wilful. We disagree.

The following facts and procedural history are relevant to this claim on appeal. Before approving the stipulation and making it an order, the court canvassed the parties about what they meant in paragraph 4.2, which states: "If the custodial parent cannot be with the children, it is the custodial parent's responsibility to make arrangements for the children unless the noncustodial parent agrees in writing to take the children." The court stated: "So, when I read this paragraph, I read [it] to be [that] if the custodial parent cannot be with the children—let's say . . . the custodial parent is going to be absent for one night or however many nights, it is the custodial parent's responsibility to make arrangements for the children unless the noncustodial parent agrees in writing to take the children. If the noncustodial parent agrees to take the children, that's terrific. . . . [I]f [the plaintiff] is traveling and [the defendant] says of course they can stay overnight and that's acceptable, I have no problem with that . . . and likewise, on the other side, if that is not an option, the children must stay with an adult. The custodial parent's responsibility is to find an adult to take care of those kids."

Additionally, the following colloquy occurred between the court and the plaintiff about paragraph 4.2:

"The Court: I think that given the context, if you and your wife want to take an overnight somewhere and it would be your night to have the kids, you know, I'm sure [the defendant] would take them. If they're not

about to do that, you've got to find—

"[The Plaintiff]: Right.

"The Court: And vice versa.

"[The Plaintiff]: Mm-hmm.

"The Court: Okay.

"[The Plaintiff]: Yes, Your Honor."

On May 1, 2017, the plaintiff filed a motion for articulation in which he asked the court to articulate several paragraphs of the stipulation, including paragraph 4.2. In that motion, he argued that "there appears to be a discrepancy in [the] definition of custody, parenting time, visitation, responsibilities of the parties, and agreements made during negotiations. Said agreements that were made during settlement discussions and during the court hearing are now confused." The court denied that motion on May 3, 2017. On that same date, the plaintiff filed a motion to open and modify the stipulation, arguing that the "disingenuous and deceitful nature of the defendant and her attorney during the settlement discussions" necessitated that the stipulation be opened and modified. On May 9, 2017, the defendant filed a motion alleging that the plaintiff violated terms in the parties' stipulation and that he was therefore in contempt of the court's order. Specifically, she asserted that the plaintiff wilfully violated terms in the parties' stipulation when he "refused to take the children, and further refused to make arrangements for the children when he learned that the defendant and her husband had alternate plans." On May 25, 2017, the plaintiff filed an objection to that motion in which he argued that he had not "wilfully violated any clear and unambiguous order of the court."

A hearing on the defendant's motion for contempt and the plaintiff's motion to open and modify the stipulation was held on July 31, 2017. In its August 8, 2017 memorandum of decision, the court determined that, because "the term 'custodial parent' was never defined in the agreement, [the court] must determine its meaning based on the intent of the parties. The [c]ourt [found] that the canvass makes crystal clear that the parties intended paragraph 4.2 to apply to both parents and that if either parent was unable to care for the children during 'their assigned time,' they must make alternative arrangements." The court concluded that the colloquy between the plaintiff and the court that occurred during the canvass "makes clear that the parties intended paragraph 4.2 to apply to both parents and when they used the phrase 'custodial parent' they intended it to mean 'the parent with custody of the children at that time.' " The court, therefore, found by clear and convincing evidence that the plaintiff was in contempt. At the same time, the court concluded that it had not been "presented with sufficient evidence upon which to fashion a sanction. The [c]ourt did not receive evidence as to

exact dates or any monetary costs which the [d]efendant was forced to incur as a result of having to care for the children during the [plaintiff's] parenting time." For that reason, the court did not impose a sanction against the plaintiff.

On appeal, the plaintiff argues that he is not the custodial parent and, therefore, paragraph 4.2 does not apply to him. As such, he contends that the court improperly found him in contempt for violating that provision. We disagree.

Although "custodial parent" is not defined in the stipulation, paragraph 4.2, when read within the context of the other provisions, makes clear that "custodial parent" refers to the parent who is meant to have the children at a given time according to the stipulation. See *Isham* v. *Isham*, 292 Conn. 170, 184, 972 A.2d 228 (2009) (construing term in agreement in context of other provisions). The stipulation provides that the parties share joint legal custody. It further provides that the minor children primarily shall reside with the mother, but also that the father shall have parenting time every other weekend. In light of the fact that the parties had a shared custody arrangement that included scheduled parenting time with the father, the sensible and ordinary meaning of "custodial parent" is the parent scheduled to have physical custody of the children at a given time according to the terms of the stipulation.[1] In the context of the custody arrangement agreed on by the parties, the intent of the parties, "ascertained by a fair and reasonable construction of the written words"; (internal quotation marks omitted) *Mettler* v. *Mettler*, supra, 165 Conn. App. 836; was for the provision to apply to both the plaintiff and the defendant. "Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 383, 107 A.3d 920 (2015). Accordingly, we conclude that the stipulation was sufficiently clear and unambiguous so as to support a judgment of contempt.

The plaintiff also argues that the court incorrectly determined that he wilfully violated the stipulation because his actions in requesting an articulation and a modification of the stipulation show that there was "a good faith misunderstanding of the definitions of the terms used and of the overall intent of the parties."[2] In response, the defendant contends that the canvass of the parties clearly indicates that the plaintiff knew that the paragraph applied to him. We agree with the defendant.

Our review of the canvass that occurred on April 11, 2017, prior to the court accepting the parties' stipulation and making it an order, plainly indicates that the plaintiff attributed the same meaning to the term "custodial parent" as the defendant. It further establishes that the

plaintiff knew he had to make alternate arrangements for the children during his parenting time if he was unavailable.

Moreover, to the extent the plaintiff argues that the court's decision to grant his motion for modification and modify paragraph 2.2, which pertains to visitation, makes the court's contempt judgment improper, we disagree. While we acknowledge that the court, on August 8, 2017, granted the plaintiff's motion to open and modify the stipulation,[3] those new terms are irrelevant as to whether the plaintiff was in contempt of the prior order. Our Supreme Court consistently has held that "[a]n order of the court must be obeyed *until* it has been modified or successfully challenged." (Emphasis added; internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 258 Conn. 713, 719, 784 A.2d 890 (2001). Accordingly, the timing in which the plaintiff filed his motions for articulation and modification and the defendant filed her motion for contempt is immaterial. In finding the plaintiff in contempt, the court properly considered the plaintiff's actions that took place *before* paragraph 2.2 was modified.

Because the stipulation was sufficiently clear and unambiguous so as to support a judgment of contempt and the court reasonably could have found that the plaintiff had wilfully violated the stipulation, the court did not abuse its discretion in granting the defendant's motion for contempt. The August 8, 2017 judgment of contempt is affirmed.

B

The plaintiff next claims the court improperly denied his September 19, 2017 motion for contempt when it concluded that the issues raised by his motion were barred by the doctrine of res judicata. We conclude that the plaintiff's claim is inadequately briefed, and we, therefore, decline to review it.

"It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Nowacki* v. *Nowacki*, 129 Conn. App. 157, 163–64,

20 A.3d 702 (2011).

We have carefully reviewed the plaintiff's appellate briefs. The plaintiff has failed to demonstrate, aside from unsupported assertions, how the court's ruling that his motion was barred by the doctrine of res judicata was improper. The plaintiff merely quotes the claim raised in another case and states that the court in this case abused its discretion "[i]n the exact same way" without providing any analysis.[4] Moreover, in his appellate reply brief, the plaintiff responds to the defendant's argument that there is an inadequate record for our review by arguing why the court should have found the defendant in contempt instead of explaining why the court improperly determined that the doctrine of res judicata barred his motion. For the foregoing reasons, we decline to review the plaintiff's claim.

C

The plaintiff also claims that the court improperly granted the defendant's August 23, 2017 motion for contempt when it held him in contempt for violating the stipulation by failing to contribute $3000 toward the purchase of a vehicle for their children. Specifically, the plaintiff argues that the court's finding was improper because the stipulation is ambiguous and his violation was not wilful. We disagree.

The following additional facts and procedural history are relevant to this claim. On August 23, 2017, the defendant filed a motion for contempt that alleged that the plaintiff violated paragraph 5.1 of the stipulation, which provides in relevant part: "The parties shall share 50/50 in the purchase of a motor vehicle at $6000. Until the youngest child graduates high school, the vehicle shall be placed into the name of the [defendant], and the parties shall share 50/50 all costs related to the motor vehicle except gas, which shall be paid by the [defendant]."

On October 19, 2017, the third day of the hearing before the court on this motion, the court ruled from the bench. The court found, amongst other things, that "[w]hile there was no time limit in place, there was testimony that the defendant had to take action regarding the children within a reasonable time so that they could attend school. [The] [d]efendant did take action in a timely manner. By April 27, 2017, she had added [the eldest child] to her insurance policy. By May 11, 2017, she had . . . made arrangements to purchase the vehicle and the purchase was finalized in . . . July, 2017.

"There appear[s] to be limited discussion between the parties regarding the purchase of a specific vehicle. Evidence did establish that the defendant communicated almost immediately her intention to give her current vehicle to the children and obtain another vehicle for herself to the plaintiff. [The] [d]efendant purchased

the vehicle she was currently leasing, a 2014 Jeep Patriot, at a purchase price of $14,000 and has indicated that this is the vehicle that the minor child will be driving. Testimony also established that the defendant requested the plaintiff reimburse her only $3000 towards the cost of the vehicle. The defendant also paid $160 to register the motor vehicle.

"Evidence further established that the plaintiff originally agreed to pay the defendant the $3000 with the understanding that that amount would be his only financial contribution towards the purchase. Then his concern became . . . whether the Jeep would be used by other members of the defendant's family. After the defendant provided [the] plaintiff with additional information, [the] plaintiff still did not pay his share according to the agreement. After several e-mails between the parties or their spouses, [the] plaintiff simply refused to pay.

"Evidence offered by the plaintiff that the reason he did not pay the $3000 [was] because the defendant did not provide him with the information he requested regarding the Jeep or her own vehicle is not relevant . . . to his argument that he did not wilfully violate this order. . . . [The plaintiff] placed requirements on the defendant to provide information such as proof of purchase for the Jeep and the vehicle for herself, information that was not required by the agreement. [The] [p]laintiff cannot claim that his obligation is relieved because of his arbitrary demands, nor can [the] plaintiff raise any good faith claim that the steps taken by the defendant were not in accordance with the agreement. As the defendant was not asking him to contribute any more than [the] $3000 that the agreement required, the plaintiff had no justification to demand any additional information. His obligation regarding the purchase of the vehicle would have been completed with a simple payment.

"[The] [p]laintiff's suggestion, and it was nothing more than that, that the children could use . . . one of his grandfather's vehicles that he had inherited as of June, 2017, was proposed only after the defendant had begun the purchase agreement for the Jeep. . . .

"[The] [p]laintiff further suggests that [the] defendant had some kind of ulterior motive for the purchase of the Jeep. This court does not credit this testimony. The fact that the defendant rather quickly chose to purchase a vehicle that was known to her, was known to be reliable and safe, bears no negative implications." The court also found that "[t]here was no testimony regarding the plaintiff's inability to pay."

Accordingly, the court found that the order was clear and unambiguous and that the plaintiff wilfully refused to comply with the order. The court therefore ordered the plaintiff to pay the $3000 toward the purchase of

the vehicle.[5]

On appeal, the plaintiff contends that paragraph 5.1 of the stipulation "seems straightforward" but that it lacks key details, which makes it ambiguous. We disagree.

Although the plaintiff correctly points out that the stipulation did not specify who would purchase the vehicle or when it would be purchased, the plaintiff fails to explain or provide any legal authority to show that the absence of such details makes the stipulation ambiguous. "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Mettler* v. *Mettler*, supra, 165 Conn. App. 836–37. We simply cannot conclude that the language of paragraph 5.1 that "[t]he parties shall share 50/50 in the purchase of a motor vehicle at $6000" is "reasonably susceptible to more than one interpretation." Id., 837. Accordingly, we conclude that the stipulation was sufficiently clear and unambiguous so as to support a judgment of contempt.

The plaintiff also contends that the court improperly found that he wilfully had violated the stipulation provision. He argues that his violation of the provision was not wilful because he had offered two free vehicles, he was not timely given the proof of purchase that he had asked for, and the defendant acted unilaterally despite the stipulation provision that provides that he shall have final decision-making authority. We disagree.

The plaintiff's excuses do not demonstrate how his failure to contribute the $3000 that he contractually agreed to provide was not wilful. Further, to the extent the plaintiff argues that the court's "decision is erroneous and not substantiated by any evidence," on the basis of our review of the record, we conclude that the court's conclusions are supported by the evidence.

Because the stipulation was sufficiently clear and unambiguous so as to support a judgment of contempt and the court reasonably could have found that the plaintiff had wilfully violated the stipulation, the court did not abuse its discretion in granting the defendant's motion for contempt. The October 19, 2017 judgment of contempt is affirmed.

II

MOTION FOR MODIFICATION CLAIM

The plaintiff next claims that the court improperly denied his motion to modify his child support obligation due to a substantial change in circumstances. Specifically, he argues that a substantial change in circumstances had occurred on the basis of his "nearly . . . 50 [percent] reduction" in gross income.[6] We disagree.

The following additional facts and procedural history are relevant to this claim. Pursuant to the parties' April 11, 2017 stipulation, the plaintiff agreed to pay the defendant $375 per week in child support. The plaintiff filed a motion for modification on July 31, 2017, in which he sought to modify his child support obligation on the basis of a substantial change in circumstances, namely, because he lost his primary source of income on June 30, 2017.

A hearing was held on the plaintiff's motion for modification on October 17, 2017. In its November 21, 2017 memorandum of decision, the court found that the "[p]laintiff testified that he was laid off from his primary source of income as a consultant with Sovereign Intelligence, LLC, and that his private consultant firm [(the Bolat Group, LLC)] was operating at a net loss. [The] [p]laintiff testified that he had been employed by Sovereign Intelligence, [LLC] at a salary of $50,000 per year and had been laid off as of June 30, 2017. He further claimed that the contracts for [the Bolat Group, LLC] had decreased and he was left with a net operating loss of $29,147."

The court found that only the first two exhibits offered by the plaintiff were relevant to his change in financial circumstances. The plaintiff's first exhibit was an "internet printout entitled 'Termination Detail Report' . . . prepared by the TriNet company . . . ." The court found that although that exhibit specified that he was laid off due to company reorganization, "[t]he report nonetheless fell short of being reliable evidence, as it appears it was not a document from Sovereign Intelligence itself, nor was there testimony explaining the exhibit and what it purported to detail. There was not sufficient reliable evidence for the court to determine what actual changes had been made in the plaintiff's compensation or that no income could be assigned as compensation to the plaintiff."

The plaintiff's second exhibit was a document prepared by the plaintiff listing the profit and losses of the Bolat Group, LLC. "[The] [p]laintiff claimed [that] the [the Bolat Group, LLC] had only gross income of $21,900 from January to October, 2017, and the 'expenses' of running the business put the company in the red for $29,147.[7] As Bolat Group LLC, prospective clients hired the plaintiff to consult on different financial and computer related matters. [The] [p]laintiff testified that the contracts to hire him had simply 'dried up' and there were no new clients. If true, then logically there would be no explanation or need for travel expenses of $4761, office expenses of $3170, maintenance expenses of $6202, and subcontractor expenses of $8250 as claimed in his profit and loss [in the plaintiff's second exhibit]." (Footnote added.) The court found that the plaintiff's second exhibit was "lacking in credibility in that it was not documented by any means but [the] plaintiff's prep-

aration of the document for court proceedings."

The court also noted that "[t]he plaintiff has demonstrated a concerted effort to move assets into his current wife's name. He admitted that he had transferred 49 percent ownership of the Bolat Group, LLC, to his wife. Testimony established [that] the subcontractor expense for $8250 listed on the [plaintiff's second exhibit] was actually moneys paid to the wife. [The] [p]laintiff used his father's address (59 Jodi [Drive], Wallingford) as the primary location of the business. When [the] plaintiff's father passed away on June 8, 2017, [the plaintiff] quit-claimed the property to his current wife on June 10, 2017. While he indicated that he spent about [fifty] hours per week on the business and the wife ten hours per week, she was paid [two and one-half] times the amount of compensation he received."

The court found as to the plaintiff's financial affidavits that he "ha[d] not listed any home as an asset on the financial affidavits filed with the court since 2015. Yet, his 2015 and 2016 tax returns record home mortgage interest deductions. It would appear that many of the expenses deducted as business expenses, thereby reducing income, were also listed on the financial affidavits as expenses."[8]

Moreover, "[t]he court found many inconsistencies in [the] plaintiff's testimony and [found] that the actions taken by [the] plaintiff were frankly not reasonable and logical if his financial assertions were true. There simply was not sufficient credible testimony and evidence regarding [the] plaintiff's claim of loss of income. [The] [p]laintiff . . . failed to meet his burden of proof proving a substantial change in financial circumstances." Accordingly, the court denied the plaintiff's motion for modification.

We begin by noting that "[t]he well settled standard of review in domestic relations cases is that [appellate courts] will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Citations omitted; internal quotation marks omitted.) *Gabriel* v. *Gabriel*, 324 Conn. 324, 336, 152 A.3d 1230 (2016).

General Statutes § 46b-86[9] governs the modification

of a child support order after the date of a dissolution judgment. "When presented with a motion to modify child support orders on the basis of a substantial change in circumstances, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and . . . make an order for modification. . . . A party moving for a modification of a child support order must clearly and definitely establish the occurrence of a substantial change in circumstances of either party that makes the continuation of the prior order unfair and improper." (Internal quotation marks omitted.) *Budrawich* v. *Budrawich*, 156 Conn. App. 628, 639, 115 A.3d 39, cert. denied, 317 Conn. 921, 118 A.3d 63 (2015).

Furthermore, "[t]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In pursuit of its fact-finding function, [i]t is within the province of the trial court . . . to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Citation omitted; internal quotation marks omitted.) *Blum* v. *Blum*, 109 Conn. App. 316, 328–29, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008).

The plaintiff bore the burden of persuading the court that his circumstances had changed substantially. See id., 328 ("[t]he party seeking modification bears the burden of showing the existence of a substantial change in the circumstances" [internal quotation marks omitted]). As the court relayed in its memorandum of decision, the plaintiff introduced testimony and documentary evidence to show that his income had declined since the parties entered into the stipulation. The court, as the fact finder, was free to discredit his testimony. In the absence of any credible evidence that the plaintiff's income had declined, the court reasonably could have found that the plaintiff had failed to prove a substantial change in his circumstances. Accordingly, the court did not abuse its discretion in denying the plaintiff's motion.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also asserts that it is impossible for him to be in contempt under this definition because, at the time of the alleged contempt, he "was forty miles away at a meeting." What we understand the plaintiff to mean is that custody is triggered when a party actually receives physical custody of the children. That interpretation, however, obviates the terms of the stipulation because the obligation to make other arrangements for the children would never attach for either parent during his or her scheduled parenting time.

[2] The plaintiff also asserts that "[i]n order to find [him] in wilful contempt, the trial court was required to find that the defendant proved, by clear and convincing evidence, that the plaintiff was required and mandated by law or case law to exercise his visitation rights." In so doing, the plaintiff fails to recognize that he was found in contempt for failing to make arrangements for the children during his scheduled parenting time when he realized he could not exercise that time. He was not found in contempt for simply failing to visit his children.

[3] In its August 8, 2017 memorandum of decision, the court ordered "that the [plaintiff's] parenting time will be every other weekend and additional time as agreed upon if and only if both children and the father wish to have that visitation occur. There shall be no penalty or sanction if he fails to exercise said access."

[4] Specifically, the plaintiff cites to *Brochard* v. *Brochard*, 165 Conn. App. 626, 637, 140 A.3d 254 (2016), and quotes the following: "The defendant claims that Judge Gould abused his discretion when he determined that the authorization issue raised by the defendant's motion for contempt was already decided, and when he purported to decide the issue in his September 28, 2015 memorandum of decision. We agree."

[5] The court also awarded the defendant $1799.50 and an additional hour's worth of court time in attorney's fees to cover the cost of defending against the plaintiff's contempt motion. The court further concluded "that the actions and behavior of the [plaintiff] throughout this entire process requiring the defendant to have to go to court to get some type of contribution, particularly [the] actions and behaviors of the [plaintiff] throughout the pendency [of this action], are what indicate to this court that an award of attorney's fees . . . is appropriate. We are not here because of an appropriate debate. We are here because [the] plaintiff deliberately attempted to obfuscate issues to avoid what was his . . . own agreement and his obligation to pay."

[6] We note that within his appellate reply brief, the plaintiff replies to the defendant's arguments on earning capacity and attacks the court's judgment in various ways that do not appear in his principal appellate brief. Amongst these new contentions raised for the first time in his reply brief, the plaintiff asserts that the court "completely disregarded" certain testimony and evidence, "misunderstood key elements of [his] testimony and evidence," made "factually erroneous" assertions, and "fabricate[d] conclusions." The plaintiff further asserts that the court's "erroneous conclusions were not based on expert analysis of the evidence, and the [c]ourt's hostility and bias are evident." The plaintiff's contentions are wholly unfounded. To the extent that the plaintiff argues that the court made erroneous factual findings, on the basis of our review of the record we cannot conclude that the court's findings were clearly erroneous. To the extent that the plaintiff argues that the court disregarded certain testimony and evidence, it is well founded that "[i]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Internal quotation marks omitted.) *Cimino* v. *Cimino*, 174 Conn. App. 1, 11, 164 A.3d 787, cert. denied, 327 Conn 929, 171 A.3d 455 (2017). Moreover, not only did the court not display hostility or bias toward the plaintiff, but our review of the transcript shows that, if anything, the court was accommodating of the plaintiff as a self-represented party.

[7] The court also explained that the "defendant challenged [the] plaintiff's claims regarding the loss of income for the Bolat Group, LLC. [The] [d]efendant offered [the] plaintiff's personal tax returns for 2015 and 2016, including the U.S. Return of Partnership Income for the Bolat Group, LLC, for both years. The 2015 return showed [that] the Bolat Group, [LLC] earned $163,290 in gross income with ordinary business income of $74,958. The 2016 return reports gross income of $147,715 and ordinary business income of $90,545." The court found that "[o]ther than [the] plaintiff's assertions that the income

no longer exists, there was no offer of documentation to substantiate his claims." Accordingly, the court found "it difficult to accept as true that this level of income simply disappeared in this short time frame."

[8] The court also found that "[f]inancial records offered as exhibits did not indicate that [the] plaintiff has made any lifestyle changes in his expenses. He has not reduced his weekly ordinary expenses, and continues to meet all his financial obligations. The plaintiff had taken little action to seek new employment; he appears to have applied for a few positions for which he was not qualified."

[9] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be . . . modified by the court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a."

---